(879 P.2d 1147)

No. 69,834

No. 69,835

STATE OF KANSAS, *Appellee*, v. PATRICK J. McGRAW and SAMUEL D. TROUT, *Appellants*.

Opinion filed September 2, 1994.

*Kurt D. Marquart* and *Bruce W. Simon*, of Kansas City, Missouri, for appellants.

*Michael A. Russell* and *Larry C. Hoffman*, assistant district attorneys, *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRISCOE, C.J., GERNON, J., and RICHARD A. MEDLEY, District Judge, assigned.

GERNON, J.: Patrick J. McGraw and Samuel D. Trout were convicted by a jury of certain offenses involving activities at a nightclub named "Shadows" in Kansas City, Kansas, which featured as one of its attractions topless female dancers.

The cases against McGraw and Trout were consolidated. McGraw was convicted of one count of patronizing a prostitute, one count of promoting prostitution, and two counts of promoting obscenity. Trout was convicted of one count of promoting obscenity.

Law enforcement agencies conducted a raid on Shadows in July of 1992. Shadows had been in operation approximately eight years at the time of the raid. McGraw was the owner of Shadows, and Trout was the manager. Whether McGraw was also part of the management of Shadows was an issue for the jury, which decided against McGraw.

As a preliminary matter, we ordered the parties to show cause why the appeal should not be dismissed because the notice of appeal for each of the defendants was filed prior to the oral pronouncement of sentence and might be ineffective pursuant to Kansas Supreme Court Rule 2.03 (1993 Kan. Ct. R. Annot. 7).

Also, our concern focused on the notice of appeal in *State v. McGraw*, No. 92 CR 1400, which named Sam Trout as the defendant in the body of the notice and, therefore, was possibly ineffective pursuant to K.S.A. 1993 Supp. 60-2103(b). The parties were ordered to address whether *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992), validates a notice of appeal filed prior to sentencing.

Counsel for McGraw and Trout contended he purposely filed the notices of appeal prior to sentencing due to a local court rule in Wyandotte County.

This jurisdictional issue arises because the notices of appeal were filed prior to judgment. "In Kansas there is no 'final judgment in the case' from which an appeal can be taken until there has been both conviction and sentencing, or suspension of sentence." *State v. Rucas*, 12 Kan. App. 2d 68, 72, 734 P.2d 673 (1987).

Kansas Supreme Court Rule 105 (1993 Kan. Ct. R. Annot. 107) states in part that a district court rule will be effective "upon

filing with the Clerk of the Supreme Court." The local rule to which counsel for McGraw and Trout refers is not on file with the Clerk of the Supreme Court and, therefore, is ineffective.

However, this court recently decided *State v. Rios*, 19 Kan. App. 2d 350, 869 P.2d 755 (1994). Rios' notice of appeal was filed December 29, 1992, although his sentencing did not occur until January 5, 1993. We held that the fundamental fairness doctrine discussed in *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), should be applied to appeals which are filed too early as well as to those which are filed too late. We also noted that the rationale underlying *Honeycutt v. City of Wichita* applied: "[T]he judicial system should offer inexpensive and speedy justice to the citizens of this state and give a liberal construction to the statutes in order to insure that cases are decided on their merits and not to deny a party his or her day in court if the other party to the litigation has not been prejudiced." 251 Kan. at 461.

This court in *Rios* noted that the State did not raise the issue that Rios had failed to properly perfect his appeal. The same is true here. We raised the jurisdictional issue here, and the State does not claim any prejudice from McGraw and Trout's early notices of appeal. We conclude that the interests of fundamental fairness require that the appeal be retained. We find that McGraw and Trout should not be penalized for their attorney's improper reliance on a purported local court rule.

A remaining question concerning jurisdiction relates to the improper wording of McGraw's notice of appeal, which lists his name in the caption of the case but names Sam Trout in the body of the notice itself. K.S.A. 1993 Supp. 60-2103(b) states: "The notice of appeal *shall* specify the parties taking the appeal." (Emphasis added.)

In *Anderson v. Scheffler*, 242 Kan. 857, 861, 752 P.2d 667 (1988), the Kansas Supreme Court held that it was "without jurisdiction to hear the arguments of a party who was not named either directly or by inference in the notice of appeal."

Here, the inclusion of "Sam Trout" rather than Patrick J. McGraw in the body of the notice appears to be a typographical error. McGraw's name appears in the case caption, and the document has the appropriate case number. The State does not argue that it has been prejudiced in any manner whatsoever by the

mistake. As to the notice of appeal, we conclude that neither McGraw nor Trout should be penalized for someone's carelessness in preparing the notices. We will retain the appeal.

McGraw and Trout's first challenge is to the admission of evidence of similar but uncharged acts pursuant to K.S.A. 60-455 and the principles of res gestae.

K.S.A. 60-455 allows the admission of evidence that a person committed a crime or civil wrong if it is relevant to prove some other material fact, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

At trial, McGraw and Trout objected to certain testimony by an Alcohol Beverage Control agent, P.F., who entered Shadows undercover on February 15 and February 16, 1991, pursuant to an investigation. P.F. testified that on the first occasion, he was met at the door by Trout and was approached by one of the dancers, who asked him if he wanted a "lap dance." P.F. agreed, and the dancer "straddled [his] legs, rubbed her crotch up against [his] groin area in an up and down motion. She also turned around and rubbed her buttocks against [his] groin area." P.F. participated in the dance by fondling [the dancer's] breasts and buttocks. After the music stopped, the dancer turned around and "opened" her G-string and P.F. "placed one five-dollar bill in the front of the G-string area." The dancer then kissed P.F. on the lips and left.

P.F. observed several other lap dances taking place in various parts of the room. He also observed two female dancers performing a simulated lesbian act on the stage. A second set of dancers later performed similar acts. P.F. paid for and received a second lap dance by a different dancer. He noted that at no time during the evening were the various dancers or patrons told to stop what they were doing by the management of the club.

The next evening, P.F. returned to the club and was again met by Trout at the front door. P.F. again observed the female dancers performing lap dances for male patrons. P.F. paid for and received two lap dances, similar in nature to the dances performed the prior evening.

Neither McGraw nor Trout were charged with acts occurring in February 1991—the dates P.F. testified to. Some, but not all,

of McGraw's charges were based upon conduct which occurred in the first half of 1992. The charge against Trout was based upon conduct which occurred in July 1992.

The trial court considered a motion by the State to determine the admissibility of the prior acts pursuant to res gestae and, in the alternative, K.S.A. 60-455. The testimony was obviously admitted; however, no record of a ruling appears in the record on appeal.

McGraw and Trout contend that the admission of P.F.'s testimony regarding the lap dances and simulated lesbian sexual acts in February 1991 violates the principles of res gestae. They further argue that the acts which formed the basis of P.F.'s testimony are irrelevant to the charges which were ultimately brought against McGraw and Trout and were too remote in time to qualify for res gestae. They agree, however, that two of the counts against McGraw were alleged to have taken place in January 1991 and concede that P.F.'s testimony would not violate the principles of res gestae so far as those counts are concerned.

The principle of res gestae is perhaps best defined in *State v. Peterson*, 236 Kan. 821, 829, 696 P.2d 387 (1985), in which the Kansas Supreme Court stated:

"Those acts done or declarations made before, during or after the happening of the principal occurrence may be admitted as part of the res gestae where those acts or declarations are so closely connected with the principal occurrence as to form in reality a part of the occurrence. [Citation omitted.] Res gestae includes those circumstances which are automatic and undesigned incidents of the particular litigated act, which may be separated from the act by lapse of time but are illustrative of such act. It is the whole of the transaction under investigation or being litigated and every part of it."

"Evidence that does not constitute a portion of the crimes charged is admissible if there are some natural, necessary, or logical connections between the evidence and the inference or result which it is designed to establish." *State v. Gray*, 235 Kan. 632, 635, 681 P.2d 669 (1984). See *State v. Ferris*, 222 Kan. 515, 517, 565 P.2d 275 (1977).

Our task, then, is to determine whether P.F.'s testimony is admissible under the theory that there is a logical connection between the evidence and the inference or result which it is designed to establish.

The dates of the crimes alleged against McGraw span a time period from January 30, 1991, to July 13, 1992. P.F.'s direct testimony described acts he observed on two evenings in February 1991. P.F.'s testimony, in our view, would be much more significant were it not for the testimony of numerous other witnesses concerning the performance of lap dancing and other sexual acts. When measured as part of the trial transcript, P.F.'s direct testimony covered only 29 pages of a 1,550-page transcript.

McGraw and Trout also attack the admission of the evidence based upon K.S.A. 60-455. Questions regarding the admissibility of prior crimes evidence pursuant to K.S.A. 60-455 are within the discretion of the trial court "whose ruling will not be interfered with on review unless that discretion was abused, or unless the trial judge admitted evidence that clearly had no bearing on any of the issues." *State v. Nunn*, 244 Kan. 207, 210-11, 768 P.2d 268 (1989).

"In ruling on the admissibility of prior crimes evidence pursuant to K.S.A. 60-455, the trial court must: (1) determine it is relevant to prove one of the eight factors specified in the statute; (2) determine the fact is a disputed, material fact; and (3) balance the probative value of the prior crime or civil wrong evidence against its tendency to prejudice the jury. *State v. Nunn*, 244 Kan. 207, 211, 768 P.2d 268 (1989); *State v. Breazeale*, 238 Kan. 714, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986)." *State v. Mason*, 250 Kan. 393, 404, 827 P.2d 748 (1992).

"Conviction is not a prerequisite to introduction of a prior offense under K.S.A. 60-455." *State v. Myrick & Nelms*, 228 Kan. 406, 420, 616 P.2d 1066 (1980). Moreover, "[t]here is no requirement that evidence of other offenses or civil wrongs be admissible as to every offense for which a defendant is being tried." *State v. McGee*, 224 Kan. 173, 177, 578 P.2d 269 ( 1978).

McGraw's defense at trial was that he neither knew about the illegal acts nor condoned them. Therefore, and McGraw and Trout concede, the evidence was properly admitted pursuant to K.S.A. 60-455 to prove knowledge and intent. However, McGraw and Trout contend that error was committed in that the limiting instruction given to the jury regarding this evidence was improper.

The instruction given by the court read as follows:

"Evidence has been admitted tending to prove that the defendant, Patrick J. McGraw, committed crimes, promoting prostitution and promoting obscenity on or about the 15th and 16th days of February, 1991. He was not charged with these crimes. This evidence may be considered solely for the purpose of proving the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident."

The record shows the State had presented a scenario whereby acts of prostitution and obscenity were commonplace at Shadows and that McGraw and Trout not only knew about the acts but encouraged such acts so they might gain monetarily by the activity taking place there. The acts to which P.F. testified tended to show motive, opportunity, identity, and intent. We conclude that they also demonstrated a common plan and absence of mistake. The acts also tended to prove McGraw's knowledge of the wrongdoing. The only element missing is that of preparation, the application of which is questionable here.

We conclude that the evidence as presented was relevant and material and that the risk of prejudice was minimal, given the quantity and quality of the evidence in its totality.

Under either theory, either as res gestae or pursuant to K.S.A. 60-455, the evidence is admissible. If admissible under the res gestae theory, a limiting instruction was unnecessary. However, the giving of the instruction by the trial court, in our view, was a cautionary instruction, more helpful to McGraw than to the State, and clearly not erroneous.

With regard to Trout, the trial court properly instructed the jury that this evidence only pertained to McGraw and should not be considered in deciding whether to convict Trout of the charge against him.

McGraw and Trout contend the trial court erred in consolidating their cases for trial.

McGraw and Trout were originally charged in separate complaints, and the State's motion to consolidate the cases was granted over their objection. Trout argues the 1991 and February 1992 charges against McGraw were completely unrelated to him and were separate and distinct from the charge against him personally and, therefore, evidence regarding these charges reflected negatively on his case.

The determination of whether two or more defendants should be tried in the same trial rests within the sound discretion of the trial court. *State v. Tate*, 228 Kan. 752, 753, 620 P.2d 326 (1980).

In *State v. Roberts*, 223 Kan. 49, 55, 574 P.2d 164 (1977), the court held that K.S.A. 22-3202(3) provides two or more defendants may be joined and tried together when (1) each of the defendants is charged with accountability for each offense included, or (2) each of the defendants is charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy, or (3) in the absence of a conspiracy it is alleged the several offenses charged were part of a common scheme or were so closely connected in time, place, and occasion that proof of one charge would require proof of the others. "[I]f two or more defendants have been tried together and none of the requirements in the preceding paragraph have been met a misjoinder results and is an absolute ground for reversal and separate trials." 223 Kan. at 55.

Both McGraw and Trout were charged with promoting obscenity and other charges during the same time period, and both claim they were unaware that such acts were taking place between the dancers and the patrons. Both were operating in positions of management, and both were responsible for the activities which took place under their supervision. Many of the same witnesses would have to have been called if the cases were tried separately, and there was evidence of a common scheme or plan involving both Trout and McGraw to promote illegal activity in order to make more profits. In summary, the charges were closely connected in time, place, occasion, and nature of the activity.

Generally, the grounds for severance are as follows:

" '(1) that the defendants have antagonistic defenses; (2) that important evidence in favor of one of the defendants which would be admissible on a separate trial would not be allowed on a joint trial; (3) that evidence incompetent as to one defendant and introducible against another would work prejudicially to the former with the jury; (4) that a confession by one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) that one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants.' "

*State v. Martin,* 234 Kan. 548, 549, 673 P.2d 104 (1983) (quoting 75 Am. Jur. 2d, Trial § 20).

The record reflects that both McGraw and Trout had the same defense, neither one confessed, no evidence was specifically excluded due to the nature of the joint trial, and neither defendant was unfairly prejudiced by evidence admitted against the other. The jury was expressly instructed to give separate consideration to each defendant and that each was entitled to have his case decided on the evidence and the law which was applicable to him only.

The jury was also instructed that "[a]ny evidence which was limited to Patrick J. McGraw should not be considered by you as to the other defendant, Sam Trout."

We find no abuse of discretion in consolidating the cases for trial.

McGraw and Trout contend the trial court erred in the giving of instructions on the crime of promoting prostitution.

Concerning the counts against McGraw for promoting prostitution, the jury was given the following instruction:

"The defendant, Patrick J. McGraw, is charged with the crime of promoting prostitution. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:
1. That the defendant
    (a) established, owned, or managed a house of prostitution; and, or
    (b) participated in the establishment, ownership, maintenance, or management of a house of prostitution; and, or
    (c) permitted any place partially or wholly owned or controlled by the defendant to be used as a house of prostitution; and, or
    (d) procured a prostitute for a house of prostitution; and, or
    (e) induced another to become a prostitute; and, or
    (f) solicited a patron for a prostitute or for a house of prostitution; and, or
    (g) procured a prostitute for a patron; and, or
    (h) [p]rocured transportation for, paid for the transportation of, or transported a person assisting or promoting that person's engaging in prostitution; and
2. That this act occurred between January 1, 1992 and July 15, 1992 in Wyandotte County, Kansas."

Defense counsel objected to the inclusion of all the subsections in the instruction, arguing that the State is required to elect which ones to put in the final instruction. The trial court over-

ruled the objection, concluding that there was evidence for each of the elements from (a) through (h).

Our conclusion is that there was sufficient evidence presented in the State's case in chief that Shadows could be considered a house of prostitution. The V.I.P. section of Shadows, a section of the bar partitioned off from the rest of the premises by smoke-colored glass, was repeatedly, if not daily, used by male patrons and dancers for sexual intercourse, oral sex, and other sexual activity.

Dancers also testified as to what was called "office duty," whereby McGraw would pay certain dancers $100 in exchange for oral sex in his office.

The sexual activity within the club was also evident by condoms scattered around the floor of the club, especially in the V.I.P. area. McGraw and his staff hired the dancers, each of whom quickly learned how tips were made. The happier the customer, the bigger the tip. They were paid no salary other than the tips they received from customers and, in fact, were required to pay $25 to the management each day for the privilege of working in the club. McGraw owned the club, was the custodian of the records and the money, and endorsed these activities.

Although we find nothing in the record to support subsection (h), which states the defendant "[p]rocured transportation for, paid for the transportation of, or transported a person assisting or promoting that person's engaging in prostitution," this error is harmless considering the overwhelming evidence to support the conviction on the other subsections.

McGraw also argues that his remaining conviction for promoting prostitution must be reversed on the grounds that patronizing a prostitute is not a lesser included offense of promoting prostitution. He appears to be arguing that proof of patronizing a prostitute could not support a conviction for promoting prostitution, as the elements of each offense are different. McGraw's argument on this issue is rather confusing and convoluted.

The record reflects that the charge of patronizing a prostitute was presented not as a lesser included offense of promoting prostitution, but as a separate charge. That specific charge was based upon the testimony of [J.S.], who stated to the jury that in February of 1992, she performed oral sex upon McGraw in his

office at Shadows in return for $100. There simply were not any lesser included offenses to consider. We find no merit to McGraw's contention on this issue.

McGraw and Trout next argue that their convictions for promoting obscenity should be reversed because lap dances per se are not obscene. Their reasoning is that they could not be guilty of promoting obscenity by either allowing or condoning these dances if the dances are not obscene. They contend that lap dancing is merely a dance expressive of erotic emotion.

The jury was instructed as follows regarding this issue:

"Any performance is obscene if the average person, applying contemporary community standards, would find that the performance taken as a whole, appeals to the prurient interest; that the performance has patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse or sodomy, or masturbation, or lewd exhibition of the genitals, and the performance, taken as a whole, lacks serious literary, educational, artistic, political, or scientific value.

"Performance means any dance, or other exhibition performed before any audience.

"Sodomy means oral copulation.

"Prurient interest means an unhealthy, unwholesome, morbid, degrading, and shameful interest in sex."

Courts generally agree that nude or partially nude dancing, commonly referred to as topless or bottomless dancing, is not an offense and will not lose First Amendment protection unless performed in an obscene manner. See *Commonwealth v. Kocinski*, 11 Mass. App. 120, 122-23, 414 N.E.2d 378 (1981); *State v. Frazier*, 683 S.W.2d 346, 349 (Tenn. Crim. App. 1984); *Lnu v. State*, 654 S.W.2d 2, 4 (Tex. Crim. App. 1982). But see *State v. Burgess*, 669 S.W.2d 637 (Mo. App. 1984).

However, the protections of the First Amendment do not extend to sexual performances that are obscene in nature. See *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 124, 126, 106 L. Ed. 2d 93, 109 S. Ct. 2829 (1989); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 69, 37 L. Ed. 2d 446, 93 S. Ct. 2528 (1973).

Our reading of the record leads us to conclude that a jury could reasonably conclude such dancing was obscene and, therefore, outside the realm of constitutional protection. For example, on the evening the club was raided, an officer observed 10 to

12 lap dances in one hour. Officer Barajas testified a dancer performed a "dance" by "[r]ubbing her crotch against— or . . . sitting on an unidentified male's crotch and rubbing her crotch against his, her breasts against his face. . . . She was moving up and down in a simulated sexual rhythmic motion." On occasion, a lap dancer went so far as to perform a handstand while wrapping her legs around the patron's neck and gyrating her crotch in his face. The State presented evidence of female dancers kissing, fondling, and having oral sex with each other on stage. A jury could easily conclude that this type of dancing was done solely to appeal to the prurient interests of the male customers so that they might leave bigger monetary tips. We find no merit to the arguments of McGraw and Trout concerning the sufficiency of the evidence.

McGraw and Trout argue that the trial court erred by the admission of certain testimony by one of the police officers.

McGraw and Trout claim that the trial court improperly allowed Lieutenant Ron Miller, commander of the Kansas City, Kansas, police department's vice and narcotics unit, to give his opinion as to how clubs like Shadows make money. They argue that this testimony was improper as Miller was not certified as an expert in this area by the court.

The trial court refused to qualify Miller as an expert, but did allow him to give opinion testimony as to how such clubs operate "based upon his extensive experience in the field and his contact with the various agencies that he's testified to involving investigations of the class 'B' clubs."

The record reflects that none of Miller's testimony went to the ultimate issues before the jury but served merely as background and foundation as to what class B clubs such as Shadows were and how they made money.

K.S.A. 60-456(a) provides that if a witness is not testifying as an expert, his or her testimony in the form of opinion or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony.

K.S.A. 60-419 states: "As a prerequisite for the testimony of a witness on a relevant or material matter, there must be evidence

that he or she has personal knowledge thereof, or experience, training or education if such be required."

Miller, a 20-year veteran of the Kansas City, Kansas, police department, has a masters degree and has received additional training from the state and federal governments, the KBI, the FBI, the Secret Service, and the IRS. He testified he had been involved in 15 to 20 different investigations into the operations of various class "B" clubs. The trial court was correct in allowing Miller to testify concerning a relevant topic within his personal knowledge and experience which is outside a normal person's knowledge.

McGraw and Trout next argue that juror misconduct requires this court to reverse their convictions.

The standard of review regarding such an issue is well settled:

"Misconduct of jurors *per se* does not necessitate a new trial, but misconduct which results in prejudice to a litigant and impairs his right to a fair and impartial trial requires a new trial. [Citations omitted.] It is for the trial court to determine in the first instance whether misconduct on the part of the jury has resulted in prejudice to a litigant, and its judgment thereon will not be overturned unless abuse of discretion is manifest." *Christopher & Son v. Kansas Paint & Color Co.*, 215 Kan. 185, 198, 523 P.2d 709, *modified on other grounds* 215 Kan. 510, 525 P.2d 626 (1974).

McGraw and Trout argue that it was misconduct for a juror to speak to another juror during a recess in asking what "ABC" (Alcohol Beverage Control) meant. The juror admitted asking the question, but none of the nearby jurors responded to the inquiry. The trial court carefully explained that the juror could not talk to anyone about the case, even fellow jurors, until the case had been submitted for deliberation. The juror indicated that he understood and apologized for the problem which he had caused. The trial court ordered him not to discuss the conversation with any other jurors. The record shows that the trial court quickly and capably handled the problem, that it was not a matter of great substance concerning the trial or the issues involved therein, and that no substantial prejudice to the rights of the accused occurred.

In another incident, two or three jurors were observed reading a newspaper containing an article on the trial. Defense counsel admitted that he did not know whether the jurors were reading

that specific article, or whether they were reading the "comics, sports page, I don't know." The jurors were questioned by the court, and all but one indicated they had not read the article. One juror admitted he had read the headlines but had passed over it and did not read the article. The court strongly admonished the jury concerning reading any articles, listening to any electronic media broadcast, or listening to anyone talking about the case until the trial was over. No copy of the article was presented to the trial court or made a part of the record on appeal. Therefore, it is impossible for us to judge whether any prejudice occurred, even assuming that one or more of the jurors might have read it. There is no indication at any point in the record of any substantial prejudice to the rights of McGraw and Trout as a result of this episode. See *State v. Kee*, 238 Kan. 342, 348-49, 711 P.2d 746 (1985).

Lastly, McGraw and Trout argue that under the totality of the circumstances, they were denied the right to a fair trial due to the cumulative errors by the trial court.

The test as to whether the cumulative error rule requires reversal is whether the totality of the circumstances substantially prejudiced a defendant and denied him or her a fair trial. See *Taylor v. State*, 251 Kan. 272, 284, 834 P.2d 1325 (1992). Our review of the record leads us to conclude that none of the alleged errors by the trial court, considered in totality, approach invoking the cumulative error rule.

Affirmed.