(953 P.2d 231)
No. 76,352

DPR, INC., a Kansas Corporation, d/b/a PAT'S LOUNGE; PATRICIA ROHRBAUGH, as President of DPR, INC.; and DON ROHRBAUGH, as Secretary/Treasurer of DPR, INC.; as officers of said corporation and in their own proper persons, *Appellants*, v. CITY OF PITTSBURG, KANSAS, *Appellee*.

Opinion filed January 23, 1998.

*William J. Pauzauskie*, of Topeka, for the appellants.

*C. A. Menghini*, city attorney, for the appellee.

*Donald L. Moler, Jr.*, for *amicus curiae* League of Kansas Municipalities.

Before LEWIS, P.J., GERNON, J., and CHARLES E. WORDEN, District Judge, assigned.

LEWIS, J.: Appellant DPR, Inc., whom we shall refer to as plaintiff, has been operating in the City of Pittsburg (City) for over 15 years. The owners of DPR, Inc., Patricia and Don Rohrbaugh, operate a business known as "Pat's Lounge." This business is licensed to sell alcoholic beverages by the drink. It also features totally nude dancing as entertainment. It is worth noting that Pat's Lounge had been in the business of serving intoxicating liquors and presenting nude dancing to the public for approximately 15 years prior to the enactment of the ordinance which is the focal point of this action.

The ordinance in question regulates the services and entertainment offered by Pat's Lounge and prohibits totally nude dancing and certain other activities. The ordinance applies only in places where alcoholic beverages are sold. At the present time, Pat's Lounge is the only business in Pittsburg affected by the ordinance. Plaintiff filed this declaratory judgment action, seeking to have the constitutionality of the ordinance determined. The trial court found the ordinance to be constitutional in all respects, and plaintiff appeals.

The facts are not remarkable, although it does appear that plaintiff is caught in a web created by a city council that misread the future. For all intents and purposes, considering the type of establishment Pat's Lounge is, that business has caused very little trouble to law enforcement officers in the City over the past 15 years.

The defining event in this controversy came with the news that a proposed racetrack would be located near Pittsburg. The city council looked ahead and saw a future littered with nude dancing establishments. It was not the kind of future the council wanted to see. The result was ordinance G-741, which banned totally nude dancing and restricted other activities in establishments that sell alcoholic beverages.

The racetrack did not attract a great number of people to the Pittsburg area and has closed. As near as we can tell from this record, no other totally nude dancing establishments were opened

and, at this time, plaintiff operates the only establishment that is subject to the provisions of the ordinance.

## STANDARD OF REVIEW

This is a case involving the constitutionality of a city ordinance. Our standard of review is set out in *City of Baxter Springs v. Bryant*, 226 Kan. 383, 385-86, 598 P.2d 1051 (1979), as follows:

" 'The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. [Citations omitted.]

" 'In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. [Citations omitted.]

" 'Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt. [Citations omitted.]

. . . .

" 'The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere. [Citations omitted.]' [Citation omitted.]

"The general rule for reviewing statutes or ordinances enacted pursuant to the police power is stated in *City of Wichita v. White*, 205 Kan. 408, 469 P.2d 287 (1970), as follows:

" 'In reviewing statutes such as these, the court begins with the proposition that all presumptions are in favor of their validity. [Citations omitted.] The court does not sit in judgment on the merits of such legislation. If the statute here challenged does not contravene significant constitutional or inherent rights of individuals, if the classification on which it is based is reasonable, if it is within the scope of the police powers of the state, if it is appropriately related to a proper purpose of such police power, the statute is not to be invalidated by the judicial arm of government.' [Citation omitted.]"

## STANDING

In many respects, plaintiff's argument against the ordinance is focused on the rights of plaintiff's customers and not itself. The City argues that plaintiff has no standing to raise these issues. "The constitutionality of government action can only be challenged by a person directly affected and such challenge cannot be made by

invoking rights of others." *Manzanares v. Bell*, 214 Kan. 589, 616, 522 P.2d 1291 (1974).

In *United States v. Hays*, 515 U.S. 737, 742-43, 132 L. Ed. 2d 635, 115 S. Ct. 2431 (1995), it was said:

"It is by now well settled that 'the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.' [Citations omitted.]"

Among other things, plaintiff attacks those portions of the ordinance which prohibit the showing of certain motion pictures, photographs, and other materials. There is nothing in the record to indicate that plaintiff's operation would be affected by this particular section of the ordinance. The City argues that under the circumstances, plaintiff has no standing to raise the issue.

Despite the general rule as set out above, we conclude that plaintiff does, indeed, have standing to invoke the rights of its customers in this case. In *State v. Neighbors*, 21 Kan. App. 2d 824, 829, 908 P.2d 649 (1995), we said:

"A special standing rule permits a party to raise overbreadth when a statute purports to regulate the First Amendment rights of others. *City of Wichita v. Wallace*, 246 Kan. at 267; *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 69, 697 P.2d 1310 (1985); see *Broadrick v. Oklahoma*, 413 U.S. 601, 611-13, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973)."

In this case, the challenge to the ordinance by plaintiff has an impact on the First Amendment rights of others. Our Supreme Court, in *City of Wichita v. Wallace*, 246 Kan. 253, 267, 788 P.2d 270 (1990), explained the special rule as follows:

"The United States Supreme Court has recognized that, although an ordinance is not vague or overbroad as applied to a defendant, he or she may nevertheless be permitted to raise its vagueness or overbreadth as applied to the First Amendment protected rights of third parties. An exception to normal standing requirements is allowed because the mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech or expression. [Citations omitted.] This exception is justified by the importance of maintaining a free and open market for the exchange of ideas, but can be

overridden if the deterrent effect on legitimate expression is not ' "both real and substantial," ' and if the statute is ' "readily subject to a narrowing construction by the state courts." ' [Citations omitted.]"

We rely on *Neighbors, Wallace*, and other similar cases cited in our opinion in deciding that plaintiff does have standing to raise issues involving the rights of third parties in its First Amendment overbreadth and vagueness attack on the ordinance.

## TWENTY-FIRST AMENDMENT VS. FIRST AMENDMENT

There is an issue between the parties as to what section of the United States Constitution is implicated by the ordinance and, if more than one section is implicated, which one controls.

The City argues that it has the power to regulate private clubs selling alcoholic beverages, that this power springs from the Twenty-first Amendment, and that this amendment controls even in the face of alleged First Amendment violations.

The trial court held that in this case the statute was framed by the Twenty-First Amendment and said:

"The City of Pittsburg possesses authority under its police powers and the grant of authority from the Home Rule Amendment to enact Ordinance No. G-741. *Its constitutionality is framed by the 21st Amendment to the U.S. Constitution, not the 1st Amendment.* The Ordinance does not infringe upon fundamental rights. The City had several rational bases to adopt its provisions, including the experience of other communities, the concern that lack of regulation might result in an influx of drinking establishments that allow and promote nudity and various sexual acts inside the premises, and the intent to prohibit persons from appearing nude in public places before strangers in such establishments." (Emphasis added.)

The trial court further stated:

"Police powers may be enacted as a restraint upon private rights of persons or to regulate the use of property, and where appropriate or necessary, prohibit the use of property for certain purposes in aid of the public safety and general welfare, and constitutional limitations form no impediment to its exercise where the regulation is reasonable and bears a fair relationship to the object sought to be attained. *Hearn v. City of Overland Park*, 244 Kan. 638, 645, 772 P.2d 758 (1989). The police power is wide in its scope and gives the governmental body broad powers to enact laws to promote the health, morals, security, and welfare of the people. Broad discretion is vested in the governing body to determine for itself what is deleterious to health or morals, or is inimical to public welfare. *Id.* at 646."

We live in a nation in which opinions may be stated or published which many of us find contrary to our core beliefs and are repelled by. Despite the fact that some of these statements trigger overwhelming public outcry and disgust, they cannot be silenced. We have not and will not infringe upon the free speech rights of others. We take this position because the First Amendment to the United States Constitution may, of all of the amendments, truly reflect the freedom of our society. The First Amendment says: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

It requires no citation of authority to note that this amendment limits state action under the Fourteenth Amendment to the United States Constitution.

The Twenty-first Amendment, on the other hand, came about as a result of the failure of the experiment with Prohibition in the United States. After that experiment had been declared a total failure, the Twenty-first Amendment was proposed and ratified. It reads: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Despite its rather confusing language, the purpose of the Twenty-first Amendment was simply to get the federal government out of the business of regulating liquor sales. The history of that Amendment is detailed in *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 134 L. Ed. 2d 711, 735, 116 S. Ct. 1495 (1996). In *Liquormart,* the United States Supreme Court said:

"From 1919 until 1933, the Eighteenth Amendment to the Constitution totally prohibited 'the manufacture, sale, or transportation of intoxicating liquors' in the United States and its territories. Section 1 of the Twenty-first Amendment repealed that prohibition, and § 2 delegated to the several States the power to prohibit commerce in, or the use of, alcoholic beverages. *The States' regulatory power over this segment of commerce is therefore largely unfettered by the Commerce Clause.' Ziffrin, Inc. v. Reeves,* 308 U.S. 132, 138, 84 L. Ed. 128, 60 S. Ct. 163 (1939)." (Emphasis added.)

*Liquormart* was a case in which the State of Rhode Island had absolutely and without exception banned the publication or broadcasting of any price of an alcoholic beverage. The State argued that it had the right to do this under the Twenty-first Amendment and that its power under the Twenty-first Amendment overruled any First Amendment rights of the defendants. The State, in making this argument, relied on *California v. LaRue*, 409 U.S. 109, 34 L. Ed. 2d 342, 93 S. Ct. 390 (1972). In *LaRue*, the court applied the Twenty-first Amendment to uphold a ban on grossly sexual exhibitions in premises licensed to serve alcoholic beverages. The Supreme Court distinguished *LaRue* and held the Rhode Island ban on liquor advertising to be unconstitutional under the First Amendment:

"Without questioning the holding in *LaRue,* we now disavow its reasoning insofar as it relied on the Twenty-first Amendment. As we explained in a case decided more than a decade after *LaRue,* although the Twenty-first Amendment limits the effect of the dormant Commerce Clause on a State's regulatory power over the delivery or use of intoxicating beverages within its borders, 'the Amendment does not license the States to ignore their obligations under other provisions of the Constitution.' [Citation omitted.] That general conclusion reflects our specific holdings that the Twenty-first Amendment does not in any way diminish the force of the Supremacy Clause. [Citations omitted.] We see no reason why the First Amendment should not also be included in that list. Accordingly, we now hold that the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment. The Twenty-first Amendment, therefore, cannot save Rhode Island's ban on liquor price advertising.' " *Liquormart,* 517 U.S. at 516.

The *Liquormart* decision establishes the supremacy of the First Amendment in cases involving the Twenty-first Amendment right of states to regulate the sale of intoxicating liquor. The First Amendment, where implicated, trumps the authority of the State to regulate the sale of liquor under the Twenty-first Amendment. To the extent the trial court may have held to the contrary, it is wrong, and we will apply the rule developed in this opinion.

We have no doubt that the City, acting under the Twenty-first Amendment, has very broad authority to exercise its police power regulating establishments selling alcoholic beverages. There seems to be little constitutional restraint against the exercise of that

power. However, a very important restriction on the police power of the City under the Twenty-first Amendment is that the exercise of that power cannot violate rights granted to citizens under the First Amendment. Whether the First Amendment applies or has been violated in this case will be analyzed as this opinion develops. However, we recognize the general power of the State under the Twenty-first Amendment to regulate the sale of intoxicating beverages. To the extent the City's exercise of the Twenty-first Amendment does not unduly interfere with rights protected by the First Amendment, it will be valid. However, to the extent the ordinance violates the First Amendment rights of plaintiff or its customers, it is unconstitutional and cannot stand.

## DOES THE ORDINANCE CONTAIN MORE THAN ONE SUBJECT?

Article 2, § 16 of the Kansas Constitution provides that "[n]o bill shall contain more than one subject, except appropriation bills and bills for revision or codification of statutes."

K.S.A. 12-3004 states:

"No ordinance shall contain more than one subject, which shall be clearly expressed in its title; and no section or sections of an ordinance shall be amended unless the amending ordinance contains the entire section or sections as amended and the section or sections amended shall be repealed."

Plaintiff, relying on the Kansas Constitution and K.S.A. 12-3004, argues that ordinance G-741 is unconstitutional because it contains more than one subject. We disagree.

The title to the ordinance in question reads: "AN ORDINANCE REGULATING CERTAIN ACTIVITIES UPON THE PREMISES OF DRINKING ESTABLISHMENTS, CLASS A AND CLASS B CLUBS, CATERERS, AND ESTABLISHMENTS LICENSED TO SELL CEREAL MALT BEVERAGES AND PROVIDING PENALTIES FOR THE VIOLATIONS OF THE ACTS PROHIBITED HEREIN."

The Kansas Supreme Court in *State v. Reves*, 233 Kan. 972, 978, 666 P.2d 1190 (1983), said:

" 'The constitutional prohibition of more than one subject in an act does not impose any limitation on the comprehensiveness of the subject, which may be as

comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several. To constitute plurality of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other. Within the meaning of the constitutional provision, matters which apparently constitute distinct and separate subjects are not so where they are not incongruous and diverse to each other.' "

This issue has also been discussed in *Garten Enterprises, Inc. v. City of Kansas City*, 219 Kan. 620, 549 P.2d 864 (1976), and *City of Kansas City v. Tipton*, 193 Kan. 651, 396 P.2d 350 (1964).

After examining the record and becoming familiar with the controlling authorities on the subject, we hold that the ordinance in question is not unconstitutional because it contains more than one subject. The ordinance deals with certain behaviors prohibited in establishments that serve alcoholic beverages. The principal thrust of the ordinance is to outlaw totally nude dancing in places selling alcoholic beverages. As we read the ordinance, it deals with only one subject and that is the prohibition of activities within an alcohol-serving establishment. Plaintiff's argument to the contrary is without merit.

## STATE PREEMPTION

Plaintiff next argues that the State of Kansas has preempted the issues of nude dancing and that the local ordinances are invalid for that reason.

We disagree. *State v. McGraw*, 19 Kan. App. 2d 1001, 879 P.2d 1147 (1994), is relied upon by plaintiff. Plaintiff argues that *McGraw* allows nonobscene public dancing and that the City has no authority to regulate that category of behavior. Plaintiff's reliance on this decision is misplaced. *McGraw* held that nude dancing is protected by the First Amendment unless it is obscene.

Plaintiff next argues that the ordinance conflicts with K.S.A. 41-2611, K.S.A. 41-2614, and K.S.A. 41-2623. These statutes deal with grounds for revocation of a liquor license, hours of operation, and qualifications to receive a liquor license. We have examined the statutes in question and find nothing to indicate that the State intended to preempt the regulation of private clubs.

On this issue, we agree with the trial court, which said:

"The State of Kansas has not attempted to preempt local units of government from enacting legislation such as Ordinance No. G-741. K.S.A. 41-2631, a portion of the State's Liquor Control Act, restricts a city from enacting ordinances 'in conflict with or contrary to the provisions of this act . . .' There is nothing in the statutory scheme which addresses the subject matter of G-741. The state has elected not to pass a uniform state law. As such, there can be no conflict between the City's ordinance and state statutes. Further, the Kansas Supreme Courts [sic], on several occasions, has approved restrictive local enactments challenged as being in derogation of Kansas statutes. In *Leavenworth Club Owners Assn. v. Atchison*, 208 Kan. 318, 492 P.2d 183 (1971), a city ordinance regulating hours of consumption of alcoholic beverages that was more restrictive than state statutes was upheld as a proper exercise of the police power; *Blue Star Supper Club, Inc. v. City of Wichita*, 208 Kan. 731, 495 P.2d 524 (1972), allowed the city to enforce an ordinance that was more strict than the state act regulating private clubs; and a city ordinance regulating hours of consumption of alcoholic beverages and prescribing more limited hours of operation than those set forth in the Liquor Control Act was approved in *Garten Enterprises, Inc. v. City of Kansas City*, 219 Kan. 620, 549 P.2d 864 (1976)."

## LOSS OF INCOME

Plaintiff argues that the trial court erred in finding that "[t]he evidence presented does not support a claim or finding that the establishment has lost substantial business or that it has been significantly less profitable than it was before the ordinance was adopted and enforced."

We have examined the record, and we agree with the trial court. Plaintiff did not present its books and records at trial. It is true that plaintiff's operator testified that in her opinion the lounge had lost business since the passage of the ordinance, but there was evidence to the contrary. Plaintiff simply did not document its loss of income in a manner sufficient to satisfy the rules of evidence.

The finding made by the trial court was a negative finding on this issue. In the case of a negative finding, " 'there must be proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice, since the negative finding signifies the failure of the party upon whom the burden of proof was cast to sustain it.' " *City of Dodge City v. Norton*, 262 Kan. 199, 203, 936 P.2d 1356 (1997). In this case, there is nothing in the record to impel us to overrule the trial court's findings of fact on this issue.

## PERNICIOUS SECONDARY EFFECTS

Plaintiff suggests that nude dancing can only be regulated if there is a showing of pernicious secondary effects from the operation of the establishment in question. This argument springs from plaintiff's belief that the ordinance was intended to regulate only the business of Pat's Lounge.

Although, as we have noted, Pat's Lounge is the only business currently being regulated by the ordinance, we conclude that the city council did not intend to single out that business. The city council was concerned over new establishments coming into town and offering nude dancing. We believe that had the new racetrack not been proposed for the Pittsburg area, it is doubtful that such an ordinance would have been suggested, let alone adopted. The City, in passing the ordinance, was reacting to false optimism concerning a proposed racetrack and, in deciding to pass the ordinance, considered problems encountered by other similar communities. In fact, Pat's Lounge was a relatively stable, trouble-free business considering what went on within its walls. There were isolated incidents of pernicious secondary effects as a result of the operation of Pat's Lounge, but they were somewhat rare and relatively minor.

We do not believe that a city must show specific examples of pernicious secondary effects caused by a drinking establishment before it can regulate that business.

In *Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 51-52, 89 L. Ed. 2d 29, 106 S. Ct. 925, *reh. denied* 475 U.S. 1132 (1986), the Court said:

"The First Amendment does not require a city, before enacting such an ordinance [zoning for adult theaters], to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."

The trial court in the instant matter held as follows on this issue:

"Several cases decided by the United States Supreme Court have upheld the authority of state and local units of government to ban nudity in bars or taverns where alcoholic liquor is sold or served. *California v. LaRue*, 409 U.S. 109, 93 S. Ct. 390 (1972); *New York State Liquor Authority v. Bellanca*, 452 U.S. 714 (1981);

*City of Newport, Ky. v. Iacobucci*, 479 U.S. 92, 107 S. Ct. 383 (1986); and *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S. Ct. 2456 (1991). In *Barnes*, the Indiana public nudity statute was upheld even though the restriction was not limited to establishments where alcohol is sold or served; it being uniformly understood that the police power doctrine grants the broadest possible authority to local units of government to regulate activities in such establishments."

Further, the trial court found:

"Cities are not required to initiate their own studies or await localized proof of the 'secondary effects' of nudity and sexual activities even though alcohol is not necessarily served or sold; instead, cities can rely upon events and occurrences at other places. (See *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S. Ct. 925 [1986])."

We agree with the comments of the trial court. The action of the City is supported by evidence of secondary effects from establishments which sell liquor and allow totally nude dancing, which is taken from other similar establishments in other cities. This, when coupled with the relatively minor evidence of those effects associated with Pat's Lounge, supports this particular exercise of the police power of the City.

## TELEVISION BROADCAST, MOVIES, PHOTOGRAPHS, AND MAGAZINES

Section 4 of the ordinance reads as follows:

"The following conduct by a licensee, a licensee's manager, employee, or agent, or by an independent contractor hired by a licensee or hired by a licensee's manager, employee or agent, or by any person with the approval, permission, acquiescence, or tolerance of a licensee or a licensee's manager, employee, or agent, if occurring on the licensed premises, is deemed contrary to the public health, safety, morals, and welfare, is unlawful, and is hereby prohibited:
    A) Knowingly exposing to the view of another person or knowingly permitting any person to remain on the licensed premises who exposes to the view of another person,
    i) the human male or female genitals, pubic area, pubic hair, anal cleft or cleavage of the buttocks, or
    ii) any portion of either the nipple of the female breast or the female vulva, or
    iii) any portion of the male penis or the penis in a discernible erect state, even if completely or opaquely covered; or
    B) Encouraging or knowingly permitting any manager, employee or agent on the licensed premises to touch, caress or fondle, whether clothed or un-

clothed, the breasts, buttocks, anus, vulva, penis or genitals of any other man-ager, employee, or agent or of any patron; or

C) Encouraging or knowingly permitting any patron on the licensed prem-ises to touch, caress or fondle, whether clothed or unclothed, the breasts, buttocks, anus, vulva, penis or genitals of any manager, employee, or agent; or

D) Performing or knowingly permitting any person to perform on the li-censed premises acts of or acts which simulate:

1) Sexual intercourse, masturbation, sodomy, including such acts with ani-mals or reptiles, or any other sexual act which is prohibited by state law; or

2) Touching, caressing or fondling the anus, vulva, penis, or genitals of the actor or another; or

E) Using or knowingly permitting any person to use on the licensed prem-ises, any artificial device or inanimate object to depict any of the acts prohibited by paragraph (D) of this section; or

F) Showing or knowingly permitting any person to show on the licensed premises any motion picture film, photograph, video tape, or other electronic or mechanical visual reproduction depicting any of the acts prohibited by par-agraph (D) of this section. PROVIDED, HOWEVER, it shall not be unlawful to show or permit to be shown any regular programming as broadcast on a commercial or public television station and not in violation of state obscenity laws; or

G) Showing or knowingly permitting any person to show on the licensed premises, or permitting any person to view from the licensed premises, any motion picture film not given a rating by the Motion Picture Association of America of G, PG, PG-13 or R."

We note that section 4 is the heart of the ordinance, and it is the portion of the ordinance which criminalizes certain behavior. Plaintiff attacks certain provisions of section 4 as unconstitutionally overbroad and/or vague. As suggested, the violation of section 4 of the ordinance or any part thereof is a crime with a potential penalty of not more than 60 days in jail and a fine of not less than $500 nor more than $1,000.

The difference between overbroad and vague, as used in this context, is discussed by the Supreme Court in *City of Wichita v. Wallace*, 246 Kan. 253, 264, 788 P.2d 270 (1990):

"[C]onfusion occurs because 'vagueness' and 'overbreadth' are sometimes used interchangeably or a clear distinction is not made between the two terms. How-ever, these terms are not synonymous. A statute or ordinance can be clear and unambiguous but may nevertheless be overbroad if it prohibits constitutionally protected conduct. [Citation omitted.] In *State ex rel. Murray v. Palmgren*, 231 Kan. at 553, we said: 'While a vague statute leaves persons of common intelligence

to guess at its meaning, an overbroad statute makes conduct punishable which under some circumstances is constitutionally protected.' [Citations omitted.]"

The overbreadth standards are addressed in *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 71-72, 697 P.2d 1310 (1985):

"An overbroad statute makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. *State v. Huffman*, 228 Kan. 186, 189, 612 P.2d 630 (1980). A successful overbreadth challenge can thus be made only when (1) the protected activity is a significant part of the law's target and (2) there exists no satisfactory method of severing that law's constitutionality from its unconstitutional applications. [Citations omitted.]"

In *State v. Neighbors*, 21 Kan. App. 2d 824, 826, 908 P.2d 649 (1995), we said:

"A statute is presumed constitutional, and all doubt must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the Constitution before it may be struck down. *State v. Scherzer*, 254 Kan. 926, Syl. ¶ 6, 869 P.2d 729 (1994).

"A statute must be sufficiently definite to meet due process standards. The test to determine whether a criminal statute is unconstitutionally vague is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983). In determining whether a statute is void for vagueness, two inquiries are appropriate: (1) whether the statute gives fair warning to those persons potentially subject to it and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement. See *City of Wichita v. Wallace*, 246 Kan. 253, 259, 788 P.2d 270 (1990)."

In *Neighbors*, we found the ordinance in question to be constitutional because "[t]he statute clearly sets forth the particular items within its scope. A person of common intelligence need not guess whether the statute forbids the sale of metal knuckles, regardless of whether they are characterized as paperweights, belt buckles, historic replicas, or wall hangings." 21 Kan. App. 2d at 827.

We conclude that based on the authorities cited above, this ordinance is not unconstitutionally vague. The language of the ordinance is clear and concise, and no patron or employee of Pat's

Lounge could harbor any doubt about what is prohibited. The City has acted in no uncertain terms to prohibit total nudity within Pat's Lounge, and that should be clear to anyone reading the ordinance. We do not consider the ordinance to be unconstitutionally vague.

The fact that we conclude the ordinance is not unconstitutionally vague does not mean it cannot be unconstitutionally overbroad.

In *State v. Hughes*, 246 Kan. 607, 792 P.2d 1023 (1990), the Supreme Court said:

"When a state chooses to regulate matters involving sensitive rights of its citizens, it is obligated to do so in a manner that bears a real and substantial relationship to the objective sought [citation omitted] and is narrowly drawn to express only those objectives [citation omitted]. We hold the dissemination and promotion of such devices for purposes of medical and psychological therapy to be a *constitutionally protected activity*. As the legislature made no provision for such acts, those sections dealing with obscene devices were properly found to be overbroad and unconstitutional. The State has demonstrated no interest in the broad prohibition of distributing the devices in question sufficiently compelling to justify to infringement of the rights of those seeking to use them in legitimate ways." 246 Kan. at 619-20.

"A statute is overbroad when its language criminalizes constitutionally protected conduct. . . . The overbreadth doctrine generally has been held to apply *only in First Amendment contexts*. [Citation omitted.] In *Hearn v. City of Overland Park*, 244 Kan. 638, 645, 772 P.2d 758, *cert. denied* 493 U.S. 976 (1989), we held a city ordinance regulating ownership of pit bull dogs could not be attacked as overbroad because the owners' rights did not fall under the *First Amendment*.

"Nevertheless, the overbreadth doctrine has been applied by the United States Supreme Court where the operation of a statute infringes on freedoms guaranteed by the Bill of Rights, where those freedoms involve privacy rights and medical matters. In *Eisenstadt v. Baird*, 405 U.S. 438, 31 L. Ed. 2d 349, 92 S.Ct. 1029 (1972), a lecturer was convicted of giving a woman a package of contraceptive foam in violation of a Massachusetts statute prohibiting distribution of contraceptives to unmarried persons. The United States Supreme Court granted the defendant standing to assert the privacy and equal protection rights of unmarried persons. It held the statute *overbroad* as a health measure in its language prohibiting all contraceptives, regardless of their safety, to all unmarried persons. The Court found the statute violated the equal protection clause of the Fourteenth Amendment and affirmed the order of the United States Court of Appeals for the First Circuit discharging the defendant.

"The trial court's decision was made on privacy and medical treatment grounds. The United States Supreme Court has found that a constitutionally protected zone of privacy exists under the First, Third, Fourth, Fifth, and Ninth Amendments to

the United States Constitution. *Griswold v. Connecticut*, 381 U.S. 479, 484-86, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965). The Court has stressed that individuals have a fundamental 'right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy.' [Citation omitted.] This liberty interest in privacy was held protected by the Fourteenth Amendment's restriction on state action against personal liberty in *Roe v. Wade*, 410 U.S. 113, 152-53, 35 L. Ed. 2d 147, 93 S. Ct. 705, *reh. denied* 410 U.S. 959 (1973). . . . [A] statute is impermissibly overbroad when it impinges without justification on the sphere of constitutionally protected privacy which encompasses therapy for medical and psychological disorders." 246 Kan. at 616-17.

We note that we deal in this case with a declaratory judgment action in which no one has of yet been charged with a violation of the ordinance. As a result, the challenge in this case is considered to be "facile" in character. We are required to determine only "whether the enactment reaches a substantial amount of constitutionally protected conduct." *Dodger's Bar & Grill v. Johnson Cty. Bd. of Com'rs*, 32 F.3d 1436, 1442 (10th Cir. 1994).

It is our conclusion that certain parts of section 4 of the ordinance are overbroad and, therefore, unconstitutional.

Section 4(G) of the ordinance prohibits the showing on the premises of Pat's Lounge of any motion picture "not given a rating by the Motion Picture Association of America of G, PG, PG-13 or R."

We conclude this section of the ordinance is far too broad in its sweep. Although it may have been intended to ban the showing of pornographic movies, its scope is much broader. Plaintiff points out that this provision of the ordinance would effectively ban movies as diverse as "National Velvet" and "Birth of a Nation" simply because these movies do not bear a rating by the Motion Picture Association of America. An overbroad statute " 'makes conduct punishable which under some circumstances is constitutionally protected.' " *City of Wichita v. Wallace*, 246 Kan. at 264.

It is not a crime to view movies which do not bear the rating of the Motion Picture Association of America, and we have no doubt there is a protected First Amendment right to do so. Despite this, section 4(G) of the ordinance would make it a crime to view a movie such as "National Velvet" within the confines of the bar. We know of no one who would reason that citizens do not have a con-

stitutional right to view that movie under the First Amendment. Although the ordinance may be aimed at so-called XXX-rated movies, its language bars any movie not rated G, PG, PG-13, or R. This is an attempt to criminalize the exercise of a First Amendment right, and this portion of the ordinance is unconstitutionally overbroad and, therefore, invalid.

Section 4(F) of the ordinance prohibits the showing of motion pictures, photographs, videotapes, etc., which depict any of the acts prohibited by paragraph D. Paragraph D bans actions involving, simulating, or showing:

"1) Sexual intercourse, masturbation, sodomy, including such acts with animals or reptiles, or any other sexual act which is prohibited by state law; or

"2) Touching, caressing or fondling the anus, vulva, penis, or genitals of the actor or another."

The right to possess certain photographs, which may be contained within a magazine, for instance, is obviously a First Amendment right. There are publications that patrons might bring with them to the bar which display actions or portions of the anatomy that are within the purview of section 4(F). The ordinance does not require that the banned material be obscene or pornographic, only that it depict that which is forbidden. The problem with the ordinance is that in its broad scope, it would criminalize bringing photographs of some of our great objects of art into Pat's Lounge. We cite as an example a statue by Auguste Rodin named "The Kiss." This statue shows two obviously nude individuals in the act of kissing and does show some of the body parts which are prohibited by paragraph D of the ordinance. There are a number of other publications which are protected by the First Amendment and which are legal to possess which might depict some portion of the male or female anatomy prohibited by paragraph D. We consider, therefore, that section 4(F) is unconstitutionally overbroad. It would criminalize the possession by individuals of photographs, etc., the protection of which is guaranteed by the First Amendment. We hold, therefore, that this provision of the ordinance is unconstitutionally overbroad and invalid.

Section 4(B) of the ordinance prohibits "[e]ncouraging or knowingly permitting any manager, employee or agent of the licensed

premises to touch, caress or fondle, whether clothed or unclothed, the breasts, buttocks, anus, vulva, penis or genitals of any other manager, employee or agent of any patron."

We are advised that this section of the ordinance was intended to prohibit "lap dancing." We conclude its scope is far wider than that and that it is, in fact, unconstitutionally overbroad.

In effect, this provision of the ordinance would put employees of Pat's Lounge at risk if an employee was dancing with his or her spouse or with a customer. It seems obvious that it is difficult if not impossible for two people to dance closely together and not to make contact with one of the prohibited body parts described by paragraph B of the ordinance. This ordinance places persons at risk who are dancing closely with their spouse, girlfriend, or boyfriend. Again, we have an ordinance which is an attempt to criminalize behavior protected by the First Amendment, and that ordinance is overbroad under the scope.

## NUDE DANCING

Finally, we come to the question of whether the ordinance can ban totally nude dancing in the City of Pittsburg. In reaching our conclusion, we do not consider the question of whether totally nude dancing is obscene, as that is not an issue in this action. We do, however, conclude that totally nude dancing can be regulated by the City and that the City has done so in a constitutional manner.

The ordinance bans totally nude dancing. If the requisite parts of the dancer are covered by the use of such items as pasties and G-strings, the ordinance would not prohibit any activity by a dancer so "clothed." The use of pasties and G-strings would protect against total nudity.

We have no hesitation in holding that this ordinance is well within the police power of the City acting under the Twenty-first Amendment. The question, however, is whether the type of dancing prohibited is entitled to the superior protection of the First Amendment. We hold that in this case it is not.

In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 115 L. Ed. 2d 504, 111 S. Ct. 2456 (1991), the United States Supreme Court reversed the 7th Circuit's decision which held that nude dancing

was expressive conduct protected by the First Amendment. The Supreme Court said:

"The Court of Appeals then heard the case en banc, and the court rendered a series of comprehensive and thoughtful opinions. The majority concluded that nonobscene nude dancing performed for entertainment is expression protected by the First Amendment, and that the public indecency statute was an improper infringement of that expressive activity because its purpose was to prevent the message of eroticism and sexuality conveyed by the dancers. *Miller v. Civil City of South Bend*, 904 F.2d 1081 (1990). We granted certiorari, 498 U.S. 807 (1990), and now hold that the Indiana statutory requirement that the dancers in the establishments involved in this case must wear pasties and G-strings does not violate the First Amendment." 501 U.S. at 565.

The Court went on to say:

"The perceived evil that Indiana seeks to address is not erotic dancing, but public nudity. The appearance of people of all shapes, sizes and ages in the nude at a beach, for example, would convey little if any erotic message, yet the State still seeks to prevent it. Public nudity is the evil the State seeks to prevent, whether or not it is combined with expressive activity." 501 U.S. at 571.

In light of the quote above from the Supreme Court in *Barnes*, we think it of some significance that in this case the public comments before the city council overcome the morality of nudity. We echo *Barnes* when we conclude that the purported evil sought to be prohibited by the ordinance was public nudity and not the expression of anything entitled to First Amendment protection. Although there was no evidence of this fact, apparently the City concluded that totally nude dancers and alcoholic beverage drinking customers are not a particularly good mix.

The *Barnes* Court, speaking through the Chief Justice, said:

"Presumably numerous other erotic performances are presented at these establishments and similar clubs without any interference from the State, so long as the performers wear a scant amount of clothing. Likewise, the requirement that the dancers don pasties and G-strings does not deprive the dance of whatever erotic message it conveys; it simply makes the message slightly less graphic." 501 U.S. at 571.

We agree with the comments of the Chief Justice set out above. The Court also said that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters

of the First Amendment, although only marginally so." 501 U.S. at 566.

In line with *Barnes*, we uphold the constitutionality of the city ordinance's ban on totally nude dancing. We have applied the four-part test set out in *United States v. O'Brien*, 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968), and, in so doing, we hold that the ordinance involved in this action is valid in its ban on totally nude dancing despite certain incidental limitations on some expressive activity.

We strike those provisions of the ordinance ruled to be unconstitutional in this opinion. The balance of the ordinance is held to be constitutional.

Affirmed in part and reversed in part.