991 P.2d 595 (1999)
1999 Utah Ct. App. 323
SALT LAKE CITY, Plaintiff and Appellee,
v.
Jennifer K. WOOD, Defendant and Appellant.
No. 981670-CA.
Court of Appeals of Utah.
November 4, 1999.
*596 W. Andrew McCullough, Orem, for Appellant.
Don M. Wrye, Salt Lake City, for Appellee.
Before Judges BENCH, BILLINGS, and ORME.

OPINION
BENCH, Judge:
¶ 1 Appellant asserts that her misdemeanor conviction should be reversed because the trial court erred in concluding that section 5.28.030 of the Salt Lake City Code is constitutional. This ordinance makes it unlawful for any person to perform as a professional dancer, in specified establishments, without first obtaining a licence. Appellant contends that the ordinance is facially unconstitutional because it abridges freedom of expression in violation of the United States Constitution and the Utah Constitution. We affirm.

*597 BACKGROUND
¶ 2 In November 1997, undercover police officers observed appellant, who was then eighteen years of age, dancing on stage at "Runway 69," an establishment licensed to serve liquor in Salt Lake City. Section 5.28.030 of the Salt Lake City Code provides that before performing in such establishments, professional dancers must first obtain a license. Other provisions of the ordinance require that the dancers be at least twenty-one years of age (as alcohol is served in such establishments), meet certain minimum costume coverage requirements, and have no physical contact with patrons while performing. Appellant was not licensed to dance, and was therefore cited for violating the license requirement.
¶ 3 At the trial court, appellant moved to dismiss the charge on the grounds that the ordinance violates the freedom of expression under both the First Amendment to the United States Constitution and Article I, Section 15 of the Utah Constitution. The trial court denied the motion to dismiss, held a bench trial, and found appellant guilty. This appeal followed.

ISSUE AND STANDARD OF REVIEW
¶ 4 The sole issue presented by appellant is whether section 5.28.030 of the Salt Lake City Code, requiring that professional dancers obtain a license before performing in certain establishments, such as "Runway 69," unconstitutionally abridges the freedom of expression. See U.S. Const. amend. I; Utah Const. art. I, § 15. We review a constitutional challenge to an ordinance for correctness, giving no deference to the trial court. See Town of Alta v. Ben Hame Corp., 836 P.2d 797, 800 (Utah Ct.App.1992).

ANALYSIS

A. Issues Not Before Us
¶ 5 Before addressing the only issue properly before us on appeal, we summarily reject some collateral issues mentioned by appellant in her appeal brief. At various places in her brief, appellant mentions constitutional principles such as vagueness, overbreadth, due process, equal protection, and prior restraint. She does not, however, develop any argument based upon these principles. Overbreadth, for example, is mentioned in passing, but is unaccompanied by argument, analysis, or citation to any authority. Notwithstanding the dissent's eagerness to address them, overbreadth and the other cursorily presented issues are not properly before this court, and we will not address them. See State v. Bishop, 753 P.2d 439, 450 (Utah 1988) (stating that "`a reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository in which the appealing party may dump the burden of argument and research'") (citation omitted); see also Walker v. U.S. Gen., Inc., 916 P.2d 903, 908 (Utah 1996) (declining to address issue when appellant's brief "wholly fail[s] to cite to the record or a single case in support of this contention"); Utah R.App. P. 24(a)(9) (providing that argument in brief "shall contain the contentions and reasons of the appellant with respect to the issues presented... with citations to the authorities, statutes, and parts of the record relied on").
¶ 6 Similarly, appellant mentions Article I, Section 15 of the Utah Constitution.[1] Appellant fails, however, to demonstrate that any additional or different protection is afforded under the Utah Constitution. Therefore, we decline to address her state constitutional arguments. See State v. Dudley, 847 P.2d 424, 426 (Utah Ct.App.1993) ("Mere allusion to state constitutional claims[,] unsupported by meaningful analysis, does not permit appellate review."); see also State v. Lafferty, 749 P.2d 1239, 1247 n. 5 (Utah 1988) (stating that party must make "an argument for different analysis under the state and federal constitutions").

B. Twenty-first Amendment
¶ 7 Appellant first argues that the license requirement cannot be justified as a *598 regulation of alcoholic beverages under the Twenty-first Amendment to the United States Constitution.[2] We disagree. In making this argument, appellant incorrectly asserts that 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), unequivocally overruled California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).
¶ 8 In Liquormart, the State of Rhode Island had totally banned the publication or broadcasting of any price of an alcoholic beverage. The State argued that it had the right to do so under the Twenty-first Amendment, and that its power under the Twenty-first Amendment overrode any First Amendment rights of defendants. The State, in making this argument, relied on LaRue, which applied the Twenty-first Amendment to uphold a ban on sexual exhibitions in establishments licensed to serve alcohol. The Supreme Court, in Liquormart, distinguished LaRue and held the Rhode Island ban on liquor advertising to be unconstitutional under the First Amendment:
Without questioning the holding in LaRue, we now disavow its reasoning insofar as it relied on the Twenty-first Amendment. As we explained in a case decided more than a decade after LaRue, although the Twenty-first Amendment limits the effect of the dormant Commerce Clause on a State's regulatory power over the delivery or use of intoxicating beverages within its borders, "the Amendment does not license the States to ignore their obligations under other provisions of the Constitution." That general conclusion reflects our specific holdings that the Twenty-first Amendment does not in any way diminish the force of the Supremacy Clause, the Establishment Clause, or the Equal Protection Clause. We see no reason why the First Amendment should not also be included in that list. Accordingly, we now hold that the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment.
Liquormart, 116 S.Ct. at 1514-15 (citations omitted).
¶ 9 Thus, rather than overruling LaRue, and thereby eviscerating the Twenty-first Amendment as a means of regulation when the First Amendment may also come into play, Liquormart simply establishes a hierarchy:
The Liquormart decision establishes the supremacy of the First Amendment in cases involving the Twenty-first Amendment right of states to regulate the sale of intoxicating liquor. The First Amendment, where implicated, trumps the authority of the State to regulate the sale of liquor under the Twenty-first Amendment.
DPR, Inc. v. City of Pittsburg, 24 Kan. App.2d 703, 953 P.2d 231, 238 (1998); see also Toy Box, Inc. v. Bay County, 989 F.Supp. 1183, 1184 (N.D.Fla.1997) (stating Liquormart did not overrule LaRue); Jott, Inc. v. Clinton Tp., 224 Mich.App. 513, 569 N.W.2d 841, 852 n. 6 (1997) (same).
We have no doubt that the City, acting under the Twenty-first Amendment, has very broad authority to exercise its police power regulating establishments selling alcoholic beverages. There seems to be little constitutional restraint against the exercise of that power. However, a very important restriction on the police power of the City under the Twenty-first Amendment is that the exercise of that power cannot violate rights granted to citizens under the First Amendment.... To the extent the City's exercise of the Twenty-first Amendment does not unduly interfere with rights protected by the First Amendment, it will be valid.
DPR, 953 P.2d at 238.
¶ 10 The ordinance in the instant case requires professional dancers to be at least twenty-one years of age before they can obtain a license to perform in an establishment that serves liquor. The Twenty-first Amendment *599 authorizes the state to prohibit minors from working in, or even entering, establishments that serve liquor. See Salt Lake City v. Ronnenburg, 674 P.2d 128, 129 (Utah 1983) (holding that ordinance prohibiting presence of minors on premises where intoxicants were served is valid because "[t]he prohibited activity has a direct relation to the public's interest in regulating alcohol and protecting minors"). Moreover, ordinances requiring that professional dancers obtain a license are clearly permissible. "The [city's] interest in preventing the employment of minors as nude dancers is compelling. Requiring that all dancers be licensed directly serves this interest." D.C.R. Entertainment, Inc. v. Pierce County, 55 Wash.App. 505, 778 P.2d 1060, 1065 (1989); see also Kev, Inc. v. Kitsap County, 793 F.2d 1053, 1060 (9th Cir.1986) (holding that state may require dancers to obtain license, and that such requirement serves valid governmental purposes); Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 937 P.2d 154, 167 (1997) (stating that "licensing requirements advance several legitimate goals" such as protecting minors, assuring correct identification of dancers, and enabling effective law enforcement). Accordingly, we hold that the license requirement in the instant case is a valid regulation under the Twenty-first Amendment. This determination is not, however, the end of the inquiry. We must also determine, consistent with Liquormart, whether the license requirement violates the First Amendment.

C. First Amendment
¶ 11 "[D]ancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so." Barnes v. Glen Theatre, Inc., 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991). Nonetheless, appellant argues that the ordinance is subject to strict scrutiny. We disagree. Even the cases cited by appellant in support of her position confirm that only laws aimed at the content of the expression are subject to strict scrutiny. See, e.g., Reno v. ACLU, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997); Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). The ordinance in this case is not aimed at the content of the expression, and appellant concedes as much when she says that "[t]he City has not attempted to differentiate between types of dancing, or the message involved in the dance," and "[t]he content of the dancing was not at issue." Dancing is not banned, nor is the content of the dance regulated by the license requirement. It simply requires that dancers obtain a license before dancing, and does not place conditions or restrictions upon content, conduct, or any other potentially expressive element of the dance. Therefore, the license requirement is not subject to strict scrutiny.
¶ 12 Appellant then argues that the license requirement is unconstitutional even under the less stringent intermediate scrutiny test, as set forth in United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). O'Brien provides the following four-part test:
[A] government regulation is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to furtherance of that interest.
Id. We will address each component of the O'Brien test in turn. See, e.g., Barnes, 111 S.Ct. at 2461 (applying O'Brien test and upholding content-neutral regulations against totally nude dancing).
¶ 13 Appellant does not argue that the license requirement is not "within the constitutional power of the government." O'Brien, 88 S.Ct. at 1679. In any event, licensing is clearly permissible. See, e.g., Barnes, 111 S.Ct. at 2461 (holding that statutes protecting "societal order and morality" are "clearly within the constitutional power of the State"). "The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances." *600 Young v. American Mini Theatres, Inc., 427 U.S. 50, 62, 96 S.Ct. 2440, 2448, 49 L.Ed.2d 310 (1976).
¶ 14 The second part of the test requires that the regulation "furthers an important or substantial governmental interest." O'Brien, 88 S.Ct. at 1679. Appellant contends that the license requirement does not do so. We disagree. It is well established that "protecting societal order and morality" is an important and substantial governmental interest justifying content-neutral regulations. Barnes, 111 S.Ct. at 2461. Licensing regulations need not be based upon conclusive proof of a connection between the activity regulated and the societal interest sought to be protected. See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 61, 93 S.Ct. 2628, 2637, 37 L.Ed.2d 446 (1973). The license requirement here furthers important and substantial governmental interests, such as preserving societal order and morality and protecting the dancers themselves (especially minors). See Ino Ino, 937 P.2d at 167 (stating that "licensing requirements ... protect minors, assure the correct identification of persons working in adult cabarets, [and] enable the City to deploy law enforcement resources effectively").
¶ 15 The third part of the test requires that "the governmental interest is unrelated to the suppression of free expression." O'Brien, 88 S.Ct. at 1679. Protecting societal order and morality is an interest unrelated to the suppression of free expression. See Barnes, 111 S.Ct. at 2462. Appellant asserts that "suppression of expression is the only reason for the ordinance," and that "this ordinance exempts any behavior other than pure, protected First Amendment expression." These assertions are without merit, and are further undermined by appellant's concession that the ordinance does not regulate the content of the expression. The license requirement does not prohibit expression, nor does it dictate or interfere with the content of the dance. Presumably, the dancer can present whatever message she or he intends to convey, so long as she or he first obtains a license. Appellant was not convicted as a result of the content of the dance, but for the "noncommunicative impact of [her] conduct, and for nothing else." O'Brien, 88 S.Ct. at 1682. Moreover, "it was not the dancing that was prohibited, but simply its being done [without a license]." Barnes, 111 S.Ct. at 2463. Simply stated, the interests advanced by the license requirement are unrelated to the suppression of free expression.
¶ 16 The fourth and final requirement under O'Brien is that the regulation must be drawn so that "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to furtherance of that interest." O'Brien, 88 S.Ct. at 1679. The license requirement here provides simply that professional dancers must obtain a license before dancing.[3] Such a requirement is neither difficult to comply with nor unduly restrictive of expression. The licensing requirement is "the bare minimum necessary to achieve the State's purpose." Barnes, 111 S.Ct. at 2463. Because it meets the fourpart O'Brien test, the ordinance does not offend the First Amendment to the United States Constitution.

CONCLUSION
¶ 17 The license requirement does not violate the freedom of expression guaranteed by *601 the First Amendment. It is a content-neutral time, place, and manner restriction tailored to meet legitimate objectives.
¶ 18 Accordingly, we affirm appellant's conviction.
BILLINGS, Judge (concurring in the result):
¶ 19 I concur in the result because appellant has not established her claim of unconstitutionality. I write separately because I conclude other constitutional issues were not properly raised or briefed by appellant, leaving the ultimate determination of the constitutionality of the ordinance for another day.
¶ 20 In his dissent, Judge Orme raises concerns regarding the constitutionality of this ordinance in restricting performance of any sort by minors. Although he identifies potentially legitimate constitutional deficiencies, appellant neither raised nor briefed the issue of concern to Judge Orme. Unfortunately, appellant attacks the ordinance solely on the license requirement section itself, and does not identify other possible infirmities, such as the broad prohibition on minors performing in places that serve alcohol. I believe we are confined to the issues presented by appellant, and thus cannot properly reach the ordinance's impact on minors or other potential constitutional concerns.
¶ 21 I am particularly troubled by whether this licensing ordinance is an unconstitutional prior restraint. To obtain a license to dance in an establishment serving alcohol, a person must apply and pay a fee to the city license supervisor. The license supervisor then passes the application along to the police department, "which shall make inquiry concerning the applicant's character and background and report whether or not in its opinion a license should be granted." Salt Lake City Code § 5.28.040. This broad grant of discretion and lack of specific standards for obtaining a license to dance may be problematic.
¶ 22 A licensing scheme violates First Amendment principles if it has one or both of two forbidden characteristics. "First, a scheme that places `unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225-26, 110 S.Ct. 596, 605, 107 L.Ed.2d 603 (1990) (citations omitted). "Second, a prior restraint that fails to place limits on the time within which the decision maker must issue the license is impermissible." Id. at 226, 110 S.Ct. at 605. The lack of adequate safeguards assuring prompt issuance of a license is akin to censorship, because "delay compels the speaker's silence." Id., 110 S.Ct. at 605.
¶ 23 The licensing system here may have both of these forbidden characteristics. However, this issue was neither raised nor briefed by appellant here. Accordingly, without deciding whether this ordinance is constitutional, I concur in the result.
ORME, Judge (dissenting):
¶ 24 There seems to be some confusion about which issues appellant raised below and which issues, duly raised below, she has adequately pursued on appeal. To clarify: Before the trial court, appellant moved to dismiss the charges and supported her motion with a six-page memorandum. While not as exhaustive as it might have been, the memorandum was surely appropriate in scope and length for a misdemeanor prosecution that was initiated with a citation.
¶ 25 First, relying on two Utah Supreme Court cases, appellant argued the ordinance was void for vagueness because it did not adequately identify the conduct proscribed. She contended she was not dancing, per se, but was modeling lingerie while music played in the background and had no notice the City would regard that activity as dancing. Second, citing a recent federal case, she contended the ordinance was overbroad because it reached all dancing and not just that which could be constitutionally restricted. Third, relying on Oregon and Utah precedents, she argued that the ordinance offended state constitutional guaranties of free speech. Fourth, she cited 44 Liquormart and urged the trial court to recognize its lesson that the First Amendment takes precedence over the Twenty-first Amendmentnot the other way around. Fifth, relying on federal case law, *602 she argued that these dancers'[1] Equal Protection rights were violated because identical dancing at other venues was not similarly regulated.
¶ 26 The City, far from arguing that appellant had failed to adequately raise any proper challenge to the constitutionality of the ordinance, responded with a thirteen-page memorandum of its own. It correctly summarized appellant's challenge to the ordinance: "The defense now moves to dismiss the charges on the basis that the ordinance under which the performers are charged violates constitutionally protected free speech provisions, equal protection concepts, and/or is unconstitutionally vague or overbroad." The City ably addressed the merits of the vagueness, overbreadth, equal protection, and state constitutional issues. The centerpiece of its position, however, was a well-developed and well-supported argument that the ordinance merely regulated the time, place, and manner of expression and thus should be evaluated under the O'Brien test.
¶ 27 On appeal, appellant picked up the debate where it left off. In a brief running thirty pages and citing nearly forty cases, appellant argued it is not the "intermediate scrutiny" test formulated under O'Brien by which we should test the constitutionality of the statute, but rather what she characterizes as the "strict scrutiny" test of Simon & Schuster v. Crime Victims Bd., 502 U.S. 105, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). She argued alternatively, and at some length, that the ordinance would not even withstand scrutiny under O'Brien.
¶ 28 In response, the City concedes that appellant raised a timely challenge to the constitutionality of the ordinance.[2] It urges us to eschew appellant's more grandiose theories of constitutional law and simply subject the ordinance to the requirements of the O'Brien test. Without necessarily rejecting any of appellant's other arguments, and without any particular eagerness, I am willing to accept the City's invitation.
¶ 29 Of the four parts of the O'Brien test, only two are really in issue: "[A regulation must] further[] an important or substantial governmental interest" and "[t]he incidental restriction on alleged First Amendment freedoms [must be] no greater than is essential to the furtherance of that interest." United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968) (emphasis added).
¶ 30 With varying degrees of precision, the City identifies these purposes of the ordinance in question: (1) the protection of morality, decency, and public order, and (2) reducing prostitution, bar fights, and public intoxication. These are worthy and appropriate objects of governmental regulation. At oral argument, the City further explained that the ordinance is complementary to its carefully drawn and detailed ordinance governing sexually oriented businesses (the SOB ordinance), see Salt Lake City Code, chapter 5.61, designed to reach forms of dance that are naughty, but not naughty enough to be cognizable under the SOB ordinance.[3] The *603 City suggests such dancing entails some of the same socially undesirable impacts of the nude and semi-nude dancing regulated under the SOB ordinance which, ironically, permits eighteen-year-olds to engage in such performances under certain circumstances. See id. §§ 5.61.110(E), -.210(A) (1998).
¶ 31 Assuming there is a range of such dancing just beyond the reach of the SOB ordinance that properly can be regulated in aid of promoting decency and reducing bar fights and prostitution, the remaining question under O'Brien is whether the restrictions on protected expression are any more intrusive than is essential to furthering these interests. Judge Bench states that the dancing license requirement "does not prohibit expression" and simply requires that dancers must obtain a license before dancing. According to Judge Bench, "[s]uch a requirement is neither difficult to comply with nor unduly restrictive of expression." While this is at least arguably true for dancers who, unlike appellant in this case, are over twenty-one, for persons like appellant who are under twenty-one, the ordinance goes far beyond establishing a simple licensing requirement and instead prohibits any expression that constitutes entertainment. The ordinance provides:
It is unlawful for any person under the age of twenty-one to perform, dance or entertain either gratuitously or for compensation in any premises licensed [to sell alcoholic beverages] under this chapter, Chapter 5.50 or Title 6 of this code.
Id. § 5.28.110 (1999).
¶ 32 Although my colleagues take comfort in the fact that we are only dealing with a licensing ordinance, it is obvious that the subject ordinance goes way too far in trying to accomplish the City's rather limited purposes when it prohibits persons under twenty-one from staging any kind of dance performance, dramatic presentation, musical number, or any other form of entertainment in restaurants and other venues serving alcohol where persons under twenty-one are nonetheless permitted to enter, associate, and engage in lawful activities.[4]
*604 ¶ 33 While the City is proud that the ordinance makes no effort to restrict only dance performances that might be objectionable or offensive, this of course means that all such performances are restricted. Does this mean the ordinance impacts the First Amendment more than is "essential" in pursuit of the City's purposes? Most definitely.
¶ 34 The ordinance absolutely bars people under the age of twenty-one, including adults over eighteen, from dance performances in restaurants and other establishments licensed to serve alcohol, even though these same persons may lawfully enter such establishments. The ordinance applies to "all premises required to be licensed pursuant to the provisions of" Salt Lake City Code § 6.04.040 (1999). See Salt Lake City Code § 5.28.020 (1999). "Licensed premises" include not only any "building, structure or place occupied by any person licensed to sell beer or to allow the consumption of liquor on such premises," but also includes recreation facilities and sports arenas where alcohol is sold. Id. § 6.04.040. Accordingly, the ordinance is apparently violated anytime a junior drill team performs a half-time show at the Delta Center during a Jazz or Starzz game.
¶ 35 Although the City says the evil it is confronting is dancing that is offensive, albeit not offensive enough to be subject to the SOB ordinance, and therefore likely to lead to prostitution and bar fights, it seeks solace in the fact that its total prohibition on dancing by those under twenty-one is content-neutral. The City is correct on that point. But at what price? Twenty year old ballerinas from Ballet West cannot perform Swan Lake at the Salt Lake Country Club. High school students from Holy Trinity Greek Orthodox Church may not perform traditional Greek dances at the Grecian Garden Restaurant. Nineteen year old students in the International Folk Dancers' club at Brigham Young University may not perform a square dance at Diamond Lil's Steakhouse.
¶ 36 As though that were not enough, the ordinance's interference with the exercise of First Amendment rights does not end there. Those under the age of twenty-one are not only prohibited from dancing, they also cannot "perform" or "entertain" in any other manner. Id. § 5.28.110. This is not a carefully focused legislative scheme to root out the evils of naughty dancing as the City contends, or even a "mere" prohibition on all dancing so as to sweep broadly enough to encompass naughty dancing. It is an absolute prohibition on those under twenty-one, including young adults, from doing anything that constitutes entertainment where alcohol is served, even in establishments where they have every right to be.
¶ 37 The ordinance illustrates how expansively the words "perform" and "entertain" are to be defined. It applies to all dancers, compensated or not; all nonmusical entertainers, compensated or not; and all musical entertainers, compensated or not.[5]See id. See also id. §§ 5.28.030, -070, -080. Thus, a nineteen year old student from the University of Utah's Hinckley Institute of Politics is prohibited from entertaining the lunch time crowd at the local V.F.W. Club by reciting the Gettysburg Address on Lincoln's birthday, even without seeking compensation. Similarly, twenty year old musicians from the Gina Bachauer competition cannot perform a piano concerto at the Alta Club, nor can a *605 cute five-year-old sing the national anthem at Franklin-Covey Field to begin a Buzz game.
¶ 38 It is embarrassing for all concerned, especially in a family-oriented community like ours, that young women would dance about in their "unmentionables." But the ordinance before us prohibits a wide range of perfectly acceptable conduct as well as dancing in lingerie. Cf. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68-70, 101 S.Ct. 2176, 2182-84, 68 L.Ed.2d 671 (1981) (even ordinances furthering substantial governmental interests must be "narrowly drawn" so as not to unnecessarily interfere with First Amendment freedoms); NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963) ("Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.") (citations omitted). Not even our conservative notions of public decency and morality are offended by modestly dressed, well-groomed dancers, for example, square dancing at a western-theme steak house.[6] Prostitution is not more likely to engulf the neighborhood around the Country Club if twenty year old actors perform "Romeo and Juliet" or an eighteen year old musician is a member of a string quartet entertaining the guests during dinner. At best, the City has spotted a small pest that eludes the net of its SOB ordinance, and it has gone after it with an elephant gun when a flyswatter would do.
¶ 39 The ordinance is unconstitutional on its face because it prohibits all forms of entertainment by persons under twenty-one in establishments where beer is found on the menu, or sold during the seventh inning stretch. If the City needs to prohibit persons under twenty-one from certain types of dance performances not covered by its SOB ordinance to better accomplish the purposes that underlie the SOB ordinance, it will have to enact something that sweeps much less broadly than this ordinance.

NOT SO FAST
¶ 40 Judge Bench disputes that the ordinance really goes as far overboard as is outlined above. Apparently by disregarding the several provisions in the ordinance dealing with matters other than dancing, see, e.g., Salt Lake City Code §§ 5.28.070 (1999) (licensure for live entertainment), -080(A) (1999) (dealing with nonmusical entertainers as well as professional dancers), -080(B) (1999) (setting different license rates for restaurants that present dance and nonmusical entertainers than those that present only musical entertainment); by substituting the word "dancer" from the title of section 110 for the word "person" which appears in the actual text of the section, id. § 5.28.110; and by reading "perform, dance or entertain" in section 110 to mean just "dance," id. (emphasis added), he crafts an interpretation of the ordinance that limits its prohibition on the activities of those under twenty-one only to dancing. Would at least this strained reading of the ordinance render it valid under O'Brien? Hardly.
¶ 41 Under this view, our hypothetical twenty year old ballerinas from Ballet West still could not perform Swan Lake at the Salt Lake Country Club. High school students from Holy Trinity Greek Orthodox Church still could not perform traditional Greek dances at the Grecian Garden Restaurant. Nineteen year old students in the International Folk Dancers' club at Brigham Young University still could not perform a square dance at Diamond Lil's Steakhouse.
¶ 42 And yet, oddly enough, twenty year old musicians from the Gina Bachauer competition *606 could perform a piano concerto at the Salt Lake Country Club. Nineteen year old students in the Drama Club at Brigham Young University could perform a cowboy skit at Diamond Lil's Steakhouse. High school students from Holy Trinity Greek Orthodox Church could sing traditional Greek songs at the Grecian Garden Restaurantat least if they were careful not to sway too much with the music.
¶ 43 It is obvious that, under this view, the ordinance is not even content neutral, but rather prohibits dance performances while permitting other kinds of performances. Thus, nineteen year old performers at the Country Club could play the theme from Franco Zeffirelli's movie "Romeo and Juliet" on musical instruments. They could perform Shakespeare's play "Romeo and Juliet"at least if they cut the dancing from Act I, scene 5. They could not, however, perform Kenneth MacMillan's ballet, "Romeo and Juliet."[7] Even under the creative reading of the ordinance suggested in Judge Bench's opinion, then, the ordinance in issue goes way too far in trying to accomplish its limited purposes by prohibiting adults under twenty-one from staging any kind of dance performance in venues where adults under twenty-one are permitted to engage in any other kind of performance. As previously noted, public decency is not offended by modestly dressed square dancers performing at a steak house. Prostitution is not more likely to engulf the neighborhood around the Country Club if twenty year old performers dance "Romeo and Juliet" than if they act it out.
¶ 44 Even under Judge Bench's interpretation, the ordinance is unconstitutional on its face because it prohibits all dance performances by persons under twenty-one in establishments where other kinds of performances by such persons are permitted. If the City needs to prohibit persons under twenty-one from certain types of dance performances not covered by its SOB ordinance in order to better accomplish the purposes which underlie that ordinance, it will have to devise something considerably narrower than an outright ban on all dancing in such establishments.

NOT SO FAST, # 2
¶ 45 Judge Billings contends it is improper to focus on the part of the ordinance that prohibits persons under twenty-one from doing whatever it is they are prohibited from doing, whether it be dancing or entertaining in any manner. She correctly points out that appellant never expressly mentioned this aspect of the ordinance either in the trial court or on appeal.
¶ 46 There are at least two reasons why we should not invoke the usual rules that issues not raised below, and issues not adequately briefed, will not be considered on appeal. First, I think it is possible appellant's counsel, as a matter of strategy, wanted to have the case decided on the most far-reaching basis possible. Appellant's counsel also represented the dancers in the "six or seven or eight" other cases. See supra, note 1. Perhaps he hoped to prevent this case from *607 being resolved on a more limited basis that would not necessarily invalidate the entire licensing scheme and would therefore be of no help to his other clients' cases. In my view, counsel's tactics should not hamstring our ability to deal with the law as it actually is rather than as the parties have pretended it to be.
¶ 47 Second, and more importantly, in debating the application of the O'Brien test to the ordinance, both sides engaged in rather conclusory analysis, not focused on the specific provisions of the ordinance. Nonetheless, whether O'Brien applied and, if it did, where it led were matters raised below and debated on appeal. The trial court denied appellant's motion to dismiss without any explanation, but the most logical view of the record is that the trial court agreed with the City that O'Brien applied and that the ordinance passed muster under O'Brien. These are legal conclusions that we evaluate de novo, for correctness. See Duffy v. Sarault, 892 F.2d 139, 145 (1st Cir.1989) (recognizing O'Brien factors are reviewed de novo); State v. Lopes, 980 P.2d 191, 193 (Utah 1999) ("A constitutional challenge to a statute presents a question of law, which we review for correctness."). To correctly judge the ordinance, we must look at it in its entirety and make our judgment about whether it does or does not unduly burden protected expression. Our review cannot be limited to those particular parts of the ordinance the parties thought to mention in their arguments.
¶ 48 That having been said, while it is true that many of the licensing cases are analyzed under "prior restraint" jurisprudence, I do not think that is the exclusive basis on which the licensing of expression can be considered. I think the City is correct that the focus of the ordinance is to regulate the time, place, and manner of dance performances. Accordingly, it is appropriate to apply the O'Brien test and consider whether, in its effort to further legitimate governmental objectives, the ordinance does more than is essentialand that is the word O'Brien usesto the accomplishment of those purposes, at the expense of protected expression.
¶ 49 Here again, it is obvious to me that the ordinance does just that. The City is concerned about suggestive dancing that threatens morality and decency and leads to prostitution, drunkenness, and brawling. Fine. Let the City license those engaged in these problematic forms of dance. But licensing ballerinas, square dancers, folk dancers, and dancers in "turtle neck sweater[s] and longer pants" bears not even a remote relationship to the City's war on moral decadence.
¶ 50 Even if it is true, as Judge Billings contends, that only the licensing of dancers over twenty-one is properly before us because of the tack taken by appellant below, I still have no hesitancy in stating that those provisions fail under O'Brien.

CONCLUSION
¶ 51 Appellant was convicted under an ordinance that is obviously unconstitutional, no matter how you slice and dice it. She is therefore entitled to have her conviction reversed. I sincerely regret that our inability to reach a consensus requires her to bother our Supreme Court and/or the federal courts to secure the relief to which she is so clearly entitled.
NOTES
[1] "No law shall be passed to abridge or restrain the freedom of speech or of the press." Utah Const. art. I, § 15.
[2] The Twenty-first Amendment to the United States Constitution provides, in relevant part, as follows: "The eighteenth article of amendment to the Constitution of the United States is hereby repealed. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI.
[3] The dissent contends that the ordinance "prohibits any expression that constitutes entertainment." However, by its terms, the ordinance requires licensing only of professional dancers. The dissent's assertion that persons "under the age of twenty-one are not only prohibited from dancing, they also cannot `perform' or `entertain' in any other manner," is incorrect. The ordinance, which is entitled "Professional Dancers," makes it unlawful to "perform as a professional dancer ... without first obtaining a license therefor." Salt Lake City Code § 5.28.030(A) (emphasis added). Thus, it is clear that the ordinance addresses only professional dancers, and not all forms of performance or entertainment as feared by the dissent. The words "perform" and "entertain" are found in the subsection of the ordinance entitled "DancersAge Restrictions," which provides that it is unlawful to "perform, dance or entertain" if the dancer is under the age of 21. Id. § 5.28.110. When read in context, this subsection clearly applies to professional dancers only. In short, the fears manifested in the dissent's parade of horribles are without foundation because the ordinance applies only to professional dancers, and not to all forms of performance or entertainment.
[1] What the trial court referred to as "six or seven or eight" cases, pending against other dancers, were deferred pending this appeal and the guidance our ruling was expected to provide.
[2] Even if appellant's own dancing was entitled to little or no First Amendment protection, the City does not dispute that appellant, in making a facial attack on the ordinance, has the right, "in effect, to assert the First Amendment rights of others not before the court whose conduct could not properly be criminalized consistent with the first amendment." Provo City Corp. v. Willden, 768 P.2d 455, 457 (Utah 1989). Accord Schad v. Borough of Mount Ephraim, 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) ("Because appellant's claims are rooted in the First Amendment, they are entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own."); State v. Jordan, 665 P.2d 1280, 1283 (Utah 1983); State v. Haig, 578 P.2d 837, 841 (Utah 1978).
[3] The SOB ordinance is the vehicle by which the City has sought to balance the regulation of indecent expression with First Amendment values. In that ordinance, the City has been careful not to regulate more broadly than is necessary. The SOB ordinance recognizes the fine line that must be walked when dealing with restrictions on First Amendment rights. The ordinance is fastidiously specific in its time, place, and manner restrictions designed to protect public health, safety, and welfare, without unduly infringing on First Amendment rights. For example, "[s]pecified sexual activities" that are restricted include, inter alia, "[f]lagellation or torture by or upon a person clad in undergarments, a mask or bizarre costume, or the condition of being fettered, bound or otherwise physically restrained on the part of the one so clothed." Salt Lake City Code § 5.61.040(22)(c) (1988). The definition of seminude is similarly specific. "'Seminude' means a state of dress in which opaque clothing covers no more than the nipple and areola of the female breast, and the male or female genitals, pubic region and anus shall be fully covered by an opaque covering no narrower than four inches wide in the front and five inches wide in the back which shall not taper to less than one inch wide at the narrowest point." Id. § 5.61.040(17). Likewise, performers may not "touch in any manner any other person[,] ... throw any object or clothing off the stage[,] ... accept any money, drink or any other object directly from any person[,] or ... allow another person to touch such performer or to place any money or object on the performer or within the costume or person of the performer." Id. § 5.61.290.

All businesses operating under the SOB ordinance must describe in their application the services to be provided, the hours the business will be open, methods of supervision to control illegal activity, and methods for promoting health and safety of the employees and patrons. See id. § 5.61.110(L) (1990). Sexually oriented businesses can only operate in limited locations, see id. § 5.61.060 (1988), and are specifically and clearly limited in what conduct is permissible. See id. §§ 5.61.250-5.61.320 (1988 & 1989).
Perhaps the most insightful element of the SOB ordinance is its narrow definition of who needs to comply with the licensing requirements. For example, no SOB license is required for sex therapists and counselors, medical practitioners, or licensed educators, see id. § 5.61.080 (1990), nor is one required for nude models so long as there is a contract for the nude modeling signed 48 hours before the modeling, no one under 18 will be present during the modeling, no sex act is involved, no masturbation is allowed in the presence of the model, no solicitation is allowed, and the nude model does not appear nude or seminude "within five feet of any other person." Id. § 5.61.085. The SOB ordinance, in its regulation of escorts, does not interfere with private nurses, aids for the elderly or handicapped, social secretaries, or others whose relationship is contractual, "having a duration of more than twelve hours and who provide a service not principally characterized as dating or socializing." Nor does it include singing telegrams, birthday greetings, or similar activities characterized by appearances in public places so long as the service is contracted for by a third party and is "of a duration not longer than an hour." Id. § 5.61.040(7) (1988).
In short, in drafting the SOB ordinance the City clearly used a scalpel to cut narrowly and precisely around expression and association protected by the First Amendment. As I hope to demonstrate in this opinion, in drafting the antidancing ordinance at issue in this case, the City traded its scalpel for a scythe.
[4] While the City can, constitutionally, ban minors from entering or working in establishments that serve liquor, see Salt Lake City v. Ronnenburg, 674 P.2d 128, 129 (Utah 1983), when an establishment allows minors and adults under the age of 21 to enter freely as patrons, in light of the hierarchy of constitutional values set out in 44 Liquormart, a city ordinance cannot thereafter unduly interfere with their First Amendment rights under the purported authority of the Twenty-first Amendment. Once those under the age of 21 are allowed on the premises, the use of the Twenty-first Amendment to interfere with constitutionally protected activities must cease. See 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 516, 116 S.Ct. 1495, 1514-15, 134 L.Ed.2d 711 (1996). Cf. Reed v. Village of Shorewood, 704 F.2d 943, 950-51 (7th Cir.1983) (recognizing that Twenty-first Amendment may bar nude dancing, "[b]ut there must be some effort at justification" before it can be used to bar rock and roll at place serving alcohol).
[5] Entertainment is defined as "the act of diverting, amusing, or causing someone's time to pass agreeably." Webster's Third New International Dictionary 757 (1976). A child smiling or making faces at the patrons in a neighboring booth during dinner at a restaurant licensed to sell beer conceivably could find herself in violation of the ordinance as written; such conduct, no doubt, is amusingor at least diverting. She clearly is in violation of the ordinance if she favors her fellow diners with a song.
[6] But, in what Judge Bench accurately recognizes as a parade of horribles, such dancers nonetheless face the prospect of criminal prosecution, as was made clear by one of the police officers in this case:

Q So anyone who's dancing anywhere, you're going to ask them for a license; is that correct?
A If I feel that there's a question with the licensing, yeah.
Q All right. Suppose she were wearing a turtleneck sweater and longer pants, would you have cited her for that?
A As long as she was dancing, yeah.
Q So dancing in the [restaurant] was what was important to you, not what they were wearing?
Q Dancing up on the stage, yeah.
[7] The crisp distinctions the City and Judge Bench see among drama, music, and dance are probably lost on the artistic community. See, e.g., 2 Encyclopedia Britannica 645 (1982) ("A ballet may, through its dance, music, and design, unfold a dramatic plot, or it may be conceived without narrative content, as a visual interpretation of the music by means of dance."). In addition to its other more obvious problems, the ordinance thus poses a substantial likelihood of chilling expression outside even its intended scope. A group of teenage thespians could perform "Macbeth" at the Country Club, but what about "Romeo and Juliet," given the dancing at Lord Capulet's masked ball? Teenaged rock, or country, or even Irish musicians could perform at the Country Club, so long as they stood still and sang directly into the mike, but could the lead singer do his best hip-hop, two-step, or jig when so moved by the music? Maybe a court would hold such dancing to be merely incidental to the acting or music, but who wants to take that chance in the face of a misdemeanor prosecution and possible criminal record? And with some rock and country (and I suppose even Irish) musicians, the singers seem ever to be dancing. At what point can the performance fairly be characterized as singing, albeit with some dance-like movements, rather than dancing, albeit with some vocals?

Appellant's vagueness argument starts to ring true, but it is enough to note that in putting so much legitimate expression at risk, the City goes far beyond what is essential to regulate naughty dancing outside the scope of the SOB ordinance, in its commendable effort to keep barroom brawling in our state's capital city to a minimum.